IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 5, 2007

## MARCILLO C. ANDERSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-00660-B      Chris Craft, Judge**

_____

**No. W2006-02231-CCA-R3-PC  - Filed September 21, 2007**

_____

The petitioner, Marcillo C. Anderson,[1] appeals the denial of his petition for post-conviction relief. He argues that counsel was ineffective due to his failure to: (1) adequately communicate with him concerning his case; (2) provide him with discovery materials regarding his case; (3) adequately investigate the case; and (4) adequately present proof that he was acting in self-defense. After review, we affirm the denial of his petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Vicki M. Carriker, Memphis, Tennessee, for the appellant, Marcillo C. Anderson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Parks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Following a jury trial, the petitioner was convicted of second degree murder and sentenced to twenty years as a Range one, standard offender. He was classified as a violent offender which required service of one hundred percent of his sentence. The facts, as stated on direct appeal, are as follows:

> Maurice Telford and the appellant spent a portion of the day on August 19, 2001, shooting dice at an apartment complex in Memphis. Mr. Telford had known the appellant for approximately eight years. During the dice game, Frederick Hill, a

---

[1] The petitioner has spelled his name two different ways in the record below. We will proceed with his name spelled "Marcillo" as it was on his first petition for post-conviction relief and on the record prior to his post-conviction hearing.

resident of the apartment complex, walked up to the appellant and Mr. Telford and asked if he could join in on the game. The appellant told Mr. Hill "No" and Mr. Hill replied, "Come on, let me shoot." The appellant continued to refuse, and the two started "tussling." Mr. Telford could not tell who started the altercation, but saw Mr. Hill put the appellant in a "choke hold" before finally letting him go. The appellant then smacked Mr. Hill. The altercation broke up without outside intervention. Mr. Hill and the appellant left the area, going their separate ways, without saying anything to each other.

On August 20, 2001, at approximately 9:00 a.m., Mr. Hill visited his mother at her home, which was located close to his apartment complex. He seemed nervous, constantly walking around the house and looking out the windows. At one point, he took the phone out of his mother's bedroom and walked out the front door, around the house and then back inside through the kitchen door. While her son was outside, Mr. Hill's mother noticed a green Maxima automobile with tinted windows outside her house. Although the window to the car was cracked and she saw a man inside, she could not identify the driver. When Mr. Hill came back into the house, he sat down for a few minutes. He dropped and shook his head while he was sitting. Mr. Hill then told his mother he was going back to the apartment he shared with his girlfriend to fix their front door. Mr. Hill walked out the front door, got on a bicycle and rode off toward his apartment.

While on the way to his apartment, Mr. Hill encountered the appellant. Cleotria Norman, who worked at the apartment complex, was repairing a window on a nearby apartment when he heard an argument. Mr. Norman looked in the direction of the voices and saw Mr. Hill sitting on his bicycle with his hands on his handlebars. The appellant was pointing a gun directly at Mr. Hill. Mr. Norman heard Mr. Hill say, "Get the pistol out of my face" to which the appellant replied, "No, I'm going to shoot you." Immediately thereafter, the appellant shot Mr. Hill. After hearing the gunshot, Mr. Norman ran to call 9-1-1. While he was running he heard another gunshot. When Mr. Norman returned to the scene of the incident, Mr. Hill was laying on the ground.

Andre Nelson and David Meyer, two officers with the Memphis Police Department, were called to the scene of the shooting. When they arrived, Mr. Hill was laying face down on the ground next to the bicycle, gasping for breath. Mr. Hill's eyes then rolled to the back of his head, and he expired at the scene. The paramedics attempted to resuscitate Mr. Hill when they arrived, but their attempts were unsuccessful. No weapons were found near Mr. Hill's body. A baseball cap, a bicycle and two empty .9 millimeter shell casings were found at the scene.

An autopsy was performed on Mr. Hill by the Shelby County Medical Examiner, Dr. O'Brien C. Smith. According to his testimony, a .9 millimeter bullet entered the left

side of Mr. Hill's chest, passing through his left lung, spine, spinal cord, right lung, and ribs. The bullet was recovered on the opposite side of Mr. Hill's body. Dr. Smith opined that the cause of death was a gunshot wound to the chest.

State v. Marcillo Anderson, No. W2003-00013-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 31, at *2-4 (Tenn. Crim. App. at Jackson, Jan. 13, 2004).

During the post-conviction hearing, the petitioner testified that he retained trial counsel before he was arrested. Counsel represented him during his preliminary hearing and at trial. The petitioner said that the only time he had spoken to counsel was on the day he retained him. The petitioner testified that counsel never visited him in jail prior to the preliminary hearing and that he never received any discovery material from counsel. He indicated that he did not request the discovery from counsel because he thought his attorney was "doing what he's supposed to do." He said that their last conversation was one day prior to his trial when counsel came to tell him that they were going to trial. The petitioner claimed that he spoke to counsel about witnesses he believed would be helpful but doubted that counsel contacted them. He did not ask counsel to file any motions because he did not understand what was going on at that time. The petitioner said that he thought counsel should have asked more questions of the prosecution's witnesses and that counsel should have called more witnesses on his behalf.

On cross-examination, the petitioner acknowledged that he shot the victim and then hid for a few days. He said that he hired trial counsel and made arrangements to surrender to police but was arrested in the parking lot at counsel's office. After his arrest, he gave a statement to the police in which he admitted killing the victim in self-defense. The petitioner argued that counsel should have filed a motion to raise the defense of self-defense. Counsel for the State attempted to explain to the petitioner that attorneys do not have to file motions to raise self-defense theories; they can simply ask the court to instruct the court to give a jury instruction on self-defense. He said that the trial court should have instructed the jury as to self-defense. He again stated that counsel only met with him on one occasion prior to trial.

The petitioner said that he was released on bond prior to the preliminary hearing but later failed to appear in court, was again arrested, and remains in custody. He testified that, while he was in custody awaiting trial, counsel did not visit him or review the discovery materials with him. The petitioner testified that counsel should have called Latisha Fields to testify on his behalf but acknowledged that she was not present at the shooting. He also acknowledged that counsel called Maurice Telford as a witness even though he was not present at the shooting. This witness was present when the defendant and the victim engaged in an argument prior to the shooting. The petitioner said that counsel should have called his fiancé and his parents to testify on his behalf.

He agreed that Cleotria Norman, a maintenance man in the apartment complex where the shooting occurred, was the only eyewitness to the incident. He acknowledged that counsel thoroughly cross-examined this witness about what this witness actually observed and the inconsistencies between his statement to police and his trial testimony. The petitioner said that

counsel came to him with an offer of a fifteen-year sentence prior to trial, but he rejected it. He said that it was his decision not to testify at trial.

Next, trial counsel testified that he represented the petitioner at both the General Sessions and Circuit Court levels of the case. Counsel said that he previously represented the petitioner and that his notes reflected that he met with the petitioner at least three times in the jail. The petitioner told him about the argument the day before the shooting, and counsel issued a subpoena for Mr. Telford so he could interview him and prepare for trial. Counsel said that he reviewed the discovery with the petitioner and specifically reviewed the testimony of the eyewitness. Counsel did not go to the scene of the shooting. He said that he wanted to put in the jury's mind that the petitioner's actions were self-defense and to show that the argument between the petitioner and the victim was not just a fight. He thought it was important to show that the victim started the fight and got the petitioner into a head lock during the altercation. Counsel said that he thought the court was wrong in not instructing the jury on self-defense though the court gave him ample opportunity to argue his position. He opined that voluntary manslaughter was a more plausible, factual determination for the jury than self-defense.

Counsel testified that the petitioner wanted a trial from the very beginning. Counsel tried to negotiate a plea down to voluntary manslaughter, but the State would not accept that arrangement. Counsel did not investigate the backgrounds of the State's witnesses in order to impeach their credibility nor did he call the petitioner's proposed witness, Latisha Fields, because counsel did not feel her testimony was relevant. He did not want to appear to the jury as if he was grasping for straws.

On cross-examination, counsel again said that he met with the petitioner at least three times. He said that his practice was to conduct the initial interview, review the facts with his client, and then, at a later time, review the facts with the client again to see if the story had changed in any way. Counsel testified that the petitioner's story basically remained the same, that he was acting in self-defense based on a fight that occurred the previous day.

The post-conviction court later issued a written order denying the petition for post-conviction relief and found therein that the petitioner failed to carry his burden of proof that his counsel was ineffective.

Analysis

On appeal, the petitioner contends that counsel was ineffective in four areas: (1) counsel failed to adequately communicate with him concerning his case; (2) counsel failed to provide him with discovery materials regarding his case; (3) counsel failed to adequately investigate the case; and (4) counsel failed to adequately present proof that the petitioner was acting in self-defense. Since the petitioner alleged ineffective assistance of counsel, it was the petitioner's burden in the post-conviction court to prove the allegations by clear and convincing evidence in order to get relief. T.C.A. § 40-30-110(f). We are required to affirm the post-conviction court's findings unless the

petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Should the petitioner fail to establish either factor, the petitioner is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); see Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). The findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. See Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

The petitioner's first contention is that counsel did not adequately communicate with him concerning his case. He testified during the post-conviction hearing that counsel only met with him on the day before trial and that they only discussed that the matter was going to trial. Counsel testified that his notes revealed that he met with the petitioner at least three times while the petitioner was incarcerated and that they reviewed the case during each meeting. The post-conviction court resolved the issue of credibility against the petitioner and believed counsel. The court further found that the petitioner failed to show additional visits would have made a difference in the outcome of the trial and dismissed the issue for lack of credible proof. We agree. The petitioner has not shown that additional meetings would have been beneficial or that the meetings that did occur were inadequate. We conclude that the petitioner has not proven his allegations by clear and convincing evidence.

Next, the petitioner argues that counsel failed to provide him with discovery materials. Counsel testified that he received and reviewed the discovery materials with the petitioner. The post-conviction court also resolved this issue in favor of counsel's testimony. Again, the petitioner has failed to prove his allegations by clear and convincing evidence. The findings of fact made by the post-conviction court are conclusive and will not be overturned unless the evidence preponderates

against them. The petitioner has provided nothing to support his argument; therefore, we must affirm the judgment from the post-conviction court.

Third, the petitioner contends that trial counsel failed to adequately investigate and specifically asserts that counsel should have called additional witnesses at trial. However, the petitioner did not call these additional witnesses during the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Black, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. Id. The petitioner has also failed to demonstrate how counsel visiting the crime scene would have been beneficial to his case. The petitioner admitted that he was responsible for shooting the victim. He argues that counsel did not interview potential witnesses. However, counsel was unable to interview an alleged eyewitness because the petitioner did not know his real name or where to locate him. The petitioner has failed to meet his burden of showing that counsel did not adequately investigate the case because he fails to present any evidence that might have been discovered had more investigation been conducted.

Finally, the petitioner argues that trial counsel failed to adequately present proof that the petitioner was acting in self-defense. Essentially, he contends that counsel failed him by his inability to prove something for which there was no evidentiary basis. This court has previously concluded that the record did not justify an instruction on self-defense. See State v. Marcillo Anderson, 2004 Tenn. Crim. App. LEXIS 31, at *6-8. The petitioner has not provided any evidence to refute this conclusion. Therefore, we conclude that the petitioner has not met his burden of proof.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-6-